**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| LAQUITA SEALS, | ) CASE NO. 1:25-CV-00383-CEH |
| Plaintiff, | ) <br> ) JUDGE CARMEN E. HENDERSON <br> ) UNITED STATES MAGISTRATE JUDGE |
| v. | ) <br> ) MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) <br> ) <br> ) |
| Defendant, | ) |

**I. Introduction**

Laquita Seals ("Seals" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 7). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's final decision denying Seals benefits.

**II. Procedural History**

On August 14, 2022, Seals filed an application for DIB, alleging a disability onset date of May 10, 2022. (ECF No. 8, PageID #: 39). The application was denied initially and upon reconsideration, and Seals requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 13, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*See id.* at PageID #: 65-86). On March 27, 2024, the ALJ issued a written decision finding Seals was not disabled. (*Id.* at PageID #: 39-59). The

ALJ's decision became final on January 14, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 23).

On February 27, 2025, Seals filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 9, 11). Seals asserts the following assignments of error:

> (1) Whether the ALJ erred by finding that the Plaintiff's diagnosed hernia, sleep apnea, and hidradenitis were not severe impairments that placed limitations on her functioning.
>
> (2) Whether the ALJ erred by not adequately considering how the Plaintiff's severe impairments would affect her capacity to remain on task in a work setting.
>
> (3) Whether the ALJ erred by discounting the opinion of the Plaintiff's treating psychologist.

(ECF No. 9).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Seals's hearing:

> The claimant has alleged disability from difficulty standing for prolonged periods, walking farther than a few steps, sitting, lifting, squatting, bending, kneeling, climbing stairs, and reaching, due to pain and fatigue. Specifically, she alleges that she has difficulty ambulating on her own due to pain and swelling in her knees, which are difficulty [sic] to extend and bend. Following a surgery in 2022 for her bowels, the claimant has had difficulty with urgency and frequent, lengthy bathroom breaks (she estimated six-to-ten-bathroom breaks in a day, sometimes lasting up to an hour at a time; she estimated spending up to three hours in the bathroom in a given day). She has difficulty with back pain. She also has difficulty from boils on her buttocks and inner thighs and is most comfortable lying down. She also has difficulty breathing when she walks. She has difficulty sleeping due to pain and urgency. She cannot perform household chores due to pain. She also has difficulty dressing and bathing due to pain and fatigue. She takes over-

> the-counter pain medication, which sometimes helps; she also uses heat for her back and ice for her knees. The claimant testified that she used a walker after surgery, and she uses a cane now. The claimant's cancer is in remission currently; she follows up with her physician every three to four months (Testimony; 3E; 4E; 7E). She also has difficulty with depression, including lack of interest and motivation. She sees a psychiatrist every two weeks, and she has mental health medication that helps sometimes; her dosage was recently changed. She has difficulty focusing, feels like her mind is cloudy, and has difficulty with memory. She sometimes needs reminders to take medication. She also reported some difficulty with spoken instructions. She has difficulty with stress, and she finds changes in routine uncomfortable. She also testified that she has difficulty getting along with others due to anxiety; her anxiety makes her nauseated, and she would rather be alone. She does not go out much, but she does go out for doctor appointments and she will ride in the car to the grocery store (Testimony; 4E/2, 5-6; 7E/8).
>
> The claimant also reported that she follows written instructions well. She spends time with others on the phone, through text, and at online church services. She gets along well with authority figures and has never been fired or laid off from a job because of problems getting along with other people (4E/4-5; 7E/6-7). She is able to pay bills, count change, handle a savings account, and use a checkbook or money orders (4E/3; 7E/5).

(ECF No. 8, PageID #: 49).

### B. Relevant Medical Evidence

The ALJ also summarized Seals's health records and symptoms:

> *Medical Evidence of Physical Impairments*
>
> The record supports that the claimant has experienced functional limitations related to rectal cancer, osteoarthritis, and obesity.
>
> The record supports a height, weight, and body mass index ("BMI") scores consistent with the diagnosis of obesity (see e.g., BMI of 54.64 (2F/11 (02/07/22)); BMI of 50.43 (1F/27 (07/05/22)); BMI of 51.69 (5F/6 (11/15/22)); BMI of 54.03 (10F/14 (02/02/23)); BMI of 54.1 (16F/15 (08/03/23)).
>
> As to the claimant's cancer, imaging of the claimant's

3

abdomen/pelvis prior to surgery showed no evidence of abdominopelvic metastatic disease (1F/4 (03/29/22)). The claimant's surgeon noted no signs of intraabdominal metastatic disease (3F/22-24 (05/10/22)). Following the claimant's surgery, her surgical pathology results showed that all margins were negative for invasive carcinoma, and her regional lymph nodes were negative for tumors (1F/6-9 (05/10/22)). Imaging of her abdomen and pelvis in November of 2022 was largely unremarkable (5F/7-8 (11/06/22)). A later PET scan showed no obvious signs of distant metastatic spread (12F/6-8 (06/21/23)). The claimant's follow-up scans have not shown any recurrence, and the claimant testified that her cancer currently is in remission (Testimony).

As to the claimant's physical impairments more generally, the claimant's remarkable examination findings and reports include the following: in early 2022, the claimant reported right knee pain managed by over-the-counter medication, and swelling in her ankles bilaterally; on examination, she had no swelling; she ambulated normally; and her range of motion was intact in her ankles and knees (2F/8 (02/07/22)). Later that spring, the claimant was assessed with moderately differentiated invasive rectal adenocarcinoma. She had low anterior resection ("LAR") surgery on May 10, 2022 (1F/4; see also 1F/10-23; 3F/3-30). Her recovery initially went well, but a few weeks after surgery, the claimant reported diarrhea, frequency, incontinence, and nausea. On examination, the claimant's incision was healing well. Her provider recommended dietary adjustments and continued monitoring (1F/3-9 (06/02/22)). She contracted a C-diff infection and was given a few courses of antibiotics (3F/44 (06/16/22); 1F/24-27 (07/05/22); 3F/51 (07/19/22)). At an examination with her osteopathic physician in July of 2022, the claimant's respiratory examination was unremarkable; she was ambulating normally; her range of motion was intact in her ankles and knees (2F/3-7 (07/29/22)).

The claimant continued to experience post-infectious irritable bowel syndrome, and her provider recommended dietary changes to manage it; her examination was unremarkable (5F/16-20 (10/18/22)). At an examination later in October of 2022, the claimant had no joint swelling, she had normal movements of all extremities and normal range of motion, and her examination was otherwise unremarkable (4F/3-8 (10/28/22)). At a follow-up with her surgeon in November of 2022, the claimant reported doing well overall, and her examination was unremarkable (5F/3-9 (11/15/22)). A few weeks later, the claimant's respiration was

normal, her gross sensation and strength were intact, she had no joint swelling, and her range of motion was normal (5F/35-39 (12/05/22)).

In early 2023, the claimant reported continued bilateral knee pain and having increased her medication use. She had been attending physical therapy with some success. Her physical examination was generally unremarkable (8F/3-6, 34-35 (02/21/23)). At a follow-up in April of 2023, the claimant continued reporting post-infectious IBS symptoms, and her provider recommended probiotics to alleviate them; the claimant's examination was unremarkable (10F/34-38 (04/18/23)). A few months later, the claimant reported doing well and experiencing reduced bowel issues. Her provider recommended adding Metamucil to her regimen (21F/5-8 (06/09/23)). In December of 2023, the claimant reported that she had been doing better and having less bowel movements, but they were increasing; she reported some relief with over-the-counter supplements, and she did not complain of abdominal pain. Her examination was largely unremarkable (21F/3-4 (12/01/23)).

At a follow-up in January of 2024, the claimant was doing well, and her physical examination was unremarkable (22F/2-12 (01/04/24)). Her examination on January 12, 2024, was similarly unremarkable (23F/3-7 (01/12/24)). At a routine follow-up a few days later, the claimant reported struggling with her knees, but her examination was unremarkable (24F/3-4 (01/16/24)). In February of 2024, the claimant reported having slipped and fallen on ice a few days prior and having some knee, back, and neck pain since. On examination, her gait and stance were normal; her right knee was swollen and tender to palpation; her right trapezius was also tender; but she was able to ambulate and had normal range of motion in her upper and lower extremities. Her provider encouraged the claimant to ice her knee and provided a prescription for a cane for use for stabilization while healing; the provider also referred the claimant for physical therapy (30F/10-30 (02/01/24)). There is no evidence in the record to indicate whether the claimant completed physical therapy.

…

*Medical Evidence of Mental Impairments*

The record supports that the claimant has experienced functional limitations related to major depressive disorder and social anxiety disorder. The claimant's mental status examinations were generally unremarkable prior to 2023 (e.g., 2F/3-7 (07/29/22)). However, the

5

> claimant's remarkable mental status examinations and findings include the following: at a consultative psychological examination on January 25, 2023, the claimant did not identify any mental health symptoms that impaired her working ability, and she denied having a history of mental health hospitalizations (6F/5)). On examination, the claimant's clothing was poorly cleaned and moderately-to-poorly kept; she was well-groomed otherwise; she maintained appropriate eye contact and was pleasant and cooperative; her speech was normal; her affect was stable and appropriate; she did not present with signs of anxiety; she had average cognitive functioning; and her insight and judgment were fair (6F/5-7).
>
> A few months later, the claimant reported to her physician that she had experienced loss in her family. She became tearful on discussion of mental health, but the rest of her mental examination was generally unremarkable. Her provider prescribed medication to treat depression (8F/3-6, 34-35; 10F/16-21 (02/21/23)). A few weeks later, the claimant underwent a mental health evaluation. The claimant again reported multiple losses and feelings of sadness, tearfulness, lack of energy and motivation, and anhedonia. She also reported that she had not yet started taking the mental health medication prescribed to her. On examination, her memory was intact and her fund of knowledge was average; she was well-groomed, pleasant, cooperative, and had good eye contact; she had normal motor activity; her speech was normal; her mood was dysthymic, and her affect was congruent to mood; her insight was fair to good; and her judgment was good (10F/22-23 (03/02/23)). At a follow-up a few weeks later, her examination was substantially similar (10F/24-27 (03/16/23)). She later reported additional losses and feeling withdrawn and anxious about social situations; but her examinations were unchanged (10F/28-30 (03/30/23); 10F/31-33 (04/13/23)). Rather, her mental status examinations were also unremarkable at her other appointments (e.g., 26F/12 (04/27/23); 26F/10 (05/18/23); 26F/8 (06/08/23); 26F/6 (08/10/23)). By September of 2023, the claimant reported some anxiety, but on examination, she was well groomed; her memory was intact and her fund of knowledge was average; her attention and concentration were normal; she was cooperative, pleasant, and had good eye contact; her motor activity was calm and relaxed; her speech was normal; her mood was anxious; and her judgment and insight were good (26F/4-5 (09/07/23)).

(ECF No. 8, PageID #: 50-52).

## C. Opinion Evidence at Issue

The ALJ considered multiple medical opinions in formulating Plaintiff's residual functional capacity ("RFC"). Of relevance to the issues before the Court, the ALJ considered the opinion of Plaintiff's psychologist, Dr. David Brinkman-Sull. (ECF No. 8, PageID #: 57). On January 23, 2024, Dr. Brinkman-Sull completed a medical source statement indicating Plaintiff suffered from recurrent major depression and social anxiety disorder that caused marked or extreme limitations in most areas of mental functioning. (*Id.* at PageID #: 841-43, 866, 880-81).[1] Dr. Brinkman-Sull opined that it was "unlikely that [Plaintiff] could manage normal work hours and be able to accomplish the cognitive duties expected in the typical job." (*Id.* at PageID #: 841, 866). The ALJ found this opinion unpersuasive. (*Id.* at PageID #: 57).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2027.

2. The claimant has not engaged in substantial gainful activity since May 10, 2022, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: rectal cancer; osteoarthritis; obesity; major depressive disorder; and social anxiety disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

---

[1] Although the ALJ referred to the "opinions" of Dr. Brinkman-Sull and cited to three separate exhibits in the record, the second and third exhibits are duplicates of portions of the first exhibit. (*Compare* ECF No. 8, PageID #: 841-43 *with id.* at PageID #: 866, 880-81).

7

>    capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently stoop; occasionally kneel, crouch, or crawl; she must avoid even moderate exposure to hazards such as unprotected heights, moving machinery, and commercial driving; she can carry out simple instructions in a routine work setting; she can respond appropriately to supervisors, coworkers, and work situations if the work does not require more than superficial interaction, meaning that it does not require negotiating with, instructing, persuading, or directing the work of others.
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> …
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 10, 2022, through the date of this decision (20 CFR 404.1520(g)).

(ECF No. 8, PageID #: 41-43, 48, 57-59).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Seals raises three issues on appeal. First, she argues the ALJ erred in finding her hernia, sleep apnea, and hidradenitis were not severe impairments. (ECF No. 9 at 1). She next argues the ALJ erred when he failed to adequately consider how her impairments would impact her ability to remain on task. (*Id.*). Finally, Plaintiff challenges the ALJ's consideration of Dr. Brinkman-Sull's opinion. (*Id.*).

### 1. Severity Determination

Plaintiff first argues the ALJ erred in finding that her hernia, sleep apnea, and hidradenitis (boils) were not severe impairments. (ECF No. 9 at 11-12). Plaintiff asserts that while the ALJ recognized these diagnosed conditions, "the ALJ erred in finding that these conditions do not place anymore than minimal limitations on [Plaintiff's] functional capacity." (*Id.* at 12). Specifically, Plaintiff argues that her "recurrent boils make it difficult for her to sit for prolonged periods of time, her sleep apnea causes persistent fatigue, and her hernia causes significant difficulty with bending" and these limitations were not incorporated into her RFC. (*Id.* at 12-13).

The Commissioner responds that Plaintiff had the burden of proving her impairments were severe and failed to carry that burden. (ECF No. 11 at 16). Further, because the ALJ concluded Plaintiff had other severe impairments, the Commissioner argues the finding that certain impairments were non-severe is "legally irrelevant" because the ALJ was required to consider the impact of *all* impairments in formulating the RFC. (*Id.* at 17). The Commissioner asserts the ALJ complied with this requirement because he specifically indicated he considered "the entire record" and "all symptoms" and he "was not required to include any functional limitations related to Plaintiff's non-severe impairments in the RFC, as he reasonably found that these impairments were not significantly limiting Plaintiff's daily functioning." (*Id.* at 17-18).

10

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe if it does not "significantly limit [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). The Sixth Circuit "construes step two as a *de minimis* hurdle, intended to 'screen out totally groundless claims.'" *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 597 (6th Cir. 2018) (citation omitted). When an ALJ determines that one or more of a claimant's impairments are severe, the ALJ must proceed to consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe." *Id.* (citation modified). Typically, "any perceived failure to find additional severe impairments at step two [does] not constitute reversible error" as long as the ALJ considered all of the claimant's impairments in the remaining steps. *Id.* (citation modified).

Here, the ALJ concluded that Plaintiff's sleep apnea, hidradenitis suppurativa, and umbilical hernia were not severe impairments, providing the following explanation:

> As to the claimant's apnea, the record supports that the claimant has experienced fatigue, but in her testimony, she attributed her difficulty sleeping due to pain and urgency, not apnea; rather, she uses a CPAP (Testimony; 4E; 7El 6F), and she has reported to her providers that her sleep improved with the use of a CPAP (10F/8-15 (02/02/23); 10F/42-46 (04/27/23); 16F/9-18 (08/03/23)). Although the record supports a diagnosis of hidradenitis suppurativa and a history of related surgical excision (e.g., 1F/26; 5F/45), there are no other medical records supporting any significant limitations from this impairment. … As to the claimant's hernia, the record supports that the claimant initially reported no associated complaints except mild discomfort (5F/35 (12/05/22); she later reported some pain in that area and received medication for it (28F/1-6 (08/21/23). More recently, the claimant reported some ache, but no other associated symptoms, and her provider does not recommend surgery (20F/4-6 (11/07/23)). … Based upon the evidence of record, these impairments are not severe because they have not significantly limited the claimant's ability to perform basic work activities for a continuous period of 12 months, either individually or in combination with other

11

impairments.

(ECF No. 8, PageID #: 42).

While Plaintiff argues the ALJ failed to consider limitations from her impairments, the records she cites largely reflect her various diagnoses without indicating any related limitations. (*See id.* at PageID #: 430, 566 (reflecting sleep apnea diagnosis); 768 (noting hernia)). To the extent Plaintiff cites her own testimony regarding her lack of sleep and trouble sitting due to boils, and a single record noting fatigue, the ALJ adequately explained why he found this evidence insufficient to support greater limitations. Specifically, the ALJ noted that Plaintiff attributed her lack of sleep to pain rather than her sleep apnea. (*Id.* at PageID #: 73-74). The ALJ recognized that Plaintiff had a history of surgical excision of her boils but there were no other records indicating limitations (*see id.* at PageID #: 307, 430), and Plaintiff fails to cite any evidence contrary to this conclusion beyond her testimony.

Based on the explanation provided by the ALJ, there is no indication he erred in finding Plaintiff's impairments to be non-severe. Further, any error would be legally irrelevant because the ALJ considered all documented limitations from these impairments in formulating the RFC. Accordingly, Plaintiff's first argument is without merit.

**2. Need for Additional Breaks**

Plaintiff next argues that the ALJ did not "challenge the veracity of [Plaintiff's] testimony, where she states that she spends up to three hours each day on the toilet due to symptoms related to her rectal cancer, as well as the side-effects of its treatment methods" but the ALJ "failed to incorporate the need for these needed additional breaks and resulting off-task behavior" in the RFC. (ECF No. 9 at 14). Although not relying on a single medical opinion in this argument, Plaintiff cites the regulations concerning the persuasiveness of medical opinions

12

and the requirement that the ALJ consider both the supportability and consistency of a such opinions. (*Id.* at 14-15).

The Commissioner responds that "[contrary to Plaintiff's assertions, the ALJ considered her allegations regarding her bowel movements and found them to be not fully supported by the evidence of record" and "Plaintiff has not shown that this conclusion was outside the ALJ's zone of choice." (ECF No. 11 at 21). The Commissioner highlights the ALJ's discussion of the medical record and argues such supports his rejection of Plaintiff's subjective testimony regarding her need for additional breaks. (*Id.* at 20-21).

As an initial matter, while Plaintiff cites regulations concerning the consideration of medical opinions, her argument focuses on her own testimony, rather than any medical opinion. (*See* ECF No. 9 at 13-15). Thus, she is actually challenging the ALJ's rejection of her subjective complaints. When evaluating subjective complaints, an ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the individual uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and

be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*; *see also Felisky v. Bowen*, 35 F. 3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so.").

Here, the ALJ explicitly recognized Plaintiff's counsel's argument that "she would need additional unscheduled breaks to use the restroom," but found the argument unpersuasive. (ECF No. 8, PageID #: 49). When reviewing the medical record, the ALJ noted that Plaintiff complained of diarrhea, frequency, and incontinence following her cancer diagnosis and related surgery and continued to experience post-infectious irritable bowel syndrome, for which her providers recommended dietary changes, and Plaintiff subsequently reported doing well overall. (*Id.* at PageID #: 51; *see id.* at PageID #: 284-85, 388-89). The ALJ also indicated Plaintiff reported continuing issues in April 2023 and her provider recommended probiotics, after which Plaintiff "reported doing well and experiencing reduced bowel issues." (*Id.* at PageID #: 51, 614, 796). In December 2023, Plaintiff reported doing better with less bowel movements. (*Id.* at PageID #: 51, 794). In his separate allegations analysis, the ALJ explained his reasoning for rejecting Plaintiff's need for additional bathroom breaks:

> As to the claimant's allegations of difficulty with urgency and frequency, while the record supports some issues in this regard, the more recent evidence of record supports that the claimant's issues were well managed: she was down to 4-5 bowel movements per day (21F/5 (06/09/23)), she was doing well (22F/5 (01/04/24)), and she denied having gastrointestinal issues (23F/5 (01/12/24)).

(*Id.* at PageID #: 54).

The ALJ's explanation makes clear that the ALJ found Plaintiff's testimony regarding her need for additional bathroom breaks not credible based on the proper factors, including the objective medical evidence and Plaintiff's contradictory statements to providers that her

14

symptoms were improving. *See* SSR 16-3p, 2017 WL 5180304, at *7-8. Substantial evidence supports the ALJ's conclusion. Thus, the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citation omitted). Plaintiff's second argument fails.

### 3. Consideration of Dr. Brinkman-Sull's Opinion

Finally, Plaintiff challenges the ALJ's consideration of the opinion of her long-term mental health provider, Dr. Brinkman-Sull. (ECF No. 9 at 15).

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 416.920c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 416.920c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion, but generally is not required to discuss other factors. 20 C.F.R. § 416.920c(b)(2). Under the regulations, "[t]he more relevant the objective medical

15

evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1)-(2).

Plaintiff argues the ALJ's "cursory dismissal" of Dr. Brinkman-Sull's opinion lacks the required explanation required by the regulations. (*Id.* at 16). Further, Plaintiff argues that contrary to the ALJ's conclusion, Dr. Brinkman-Sull's opinion is both consistent with and supported by the medical records. (*Id.* at 16-18).

In response, the Commissioner argues substantial evidence supports the ALJ' evaluation of the opinion. (ECF No. 11 at 21). The Commissioner asserts the ALJ properly found Dr. Brinkman-Sull's records were not supported by his own examinations of Plaintiff, which were generally unremarkable except for her mood and affect. (*Id.* at 22). Additionally, the Commissioner points to the ALJ's explanation that the opinion was inconsistent with the complete medical record which reflected no more than fair or moderate limitation in mental functioning. (*Id.* at 23). The Commissioner argues the ALJ provided a detailed analysis of Plaintiff's mental functioning at step three and was not required to repeat that analysis when discounting Dr. Brinkman-Sull's opinion.

Having reviewed the ALJ's decision and the relevant medical records, the Court agrees with the Commissioner. In his decision, the ALJ provided the following discussion of Dr. Brinkman-Sull's opinion:

> The undersigned also is not persuaded by the opinions of the claimant's psychologist, David Brinkman-Sull, Ph.D., dated

16

>January 24, 2024 (25F; 27F; 29F), opining that the claimant has marked limitations in interacting with others and extreme limitations in the other areas of mental functioning (29F) and further opining that the claimant's mental health impairments severely impact her and would make it unlikely that she could manage normal work hours and be able to accomplish cognitive duties expected in a typical job (25F; 27F). The undersigned is not persuaded by these opinions because they are not supported by Dr. Brinkman-Sull's own examinations of the claimant, which were generally unremarkable aside from some issues with mood and affect (e.g., 10F/22-33; 26F/4-12). Additionally, the more complete medical record supports that the claimant has no more than fair or moderate limitations in her mental functioning, as set forth in the Paragraph B Criteria Analysis above. Therefore, the undersigned is not persuaded by this opinion.

(ECF No. 8, PageID #: 57).

The ALJ's discussion makes clear that he considered both the supportability and consistency of Dr. Brinkman-Sull's opinion in finding it unpersuasive. As noted by the ALJ, Dr. Brinkman-Sull's restrictive limitations were not supported by his own records, which reflected Plaintiff's complaints of anxiety and depression following the deaths of multiple family members but otherwise reflected normal mental status exams, including that Plaintiff had intact memory with normal/good concentration; was pleasant and cooperative with good eye contact; did not display paranoia, delusions, or hallucinations; had fair insight and good judgment; and possessed an average fund of knowledge. (*See id.* at PageID #: 602-13, 847-55). The ALJ also addressed consistency when he observed that the complete record supported only fair or moderate limitations as he detailed in his step three determination. (*Id.* at PageID #: 57). The ALJ's earlier discussion similarly included observations that Plaintiff's records showed average cognitive functioning with her memory and fund of knowledge being generally unremarkable; Plaintiff was generally well-groomed, pleasant, and cooperative and had a stable and appropriate affect; and Plaintiff reported being able to follow written instructions well, pay bills, count

17

change, handle a savings account, and use money orders. (*Id.* at PageID #: 44-47). The ALJ was not required to repeat this entire discussion in reference to his consistency determination. *See Dobson v. Comm'r of Soc. Sec.*, No. 1:19-cv-1424, 2020 WL 5106787, at *9 (N.D. Ohio Aug. 31, 2020).

Overall, the ALJ adequately explained his consideration of Dr. Brinkman-Sull's opinion, with the appropriate discussion of the opinion's supportability and consistency, and substantial evidence supports the AJL's conclusion. Thus, Plaintiff's third issue is without merit.

## VI. Conclusion

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Seals benefits.

Dated: November 4, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE